Filed 7/10/26  L.A. v. Super. Ct. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| L.A. et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA BARBARA COUNTY,<br><br>    Respondent;<br><br>SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Real Party in Interest. | 2d Juv. No. B353876<br>(Super. Ct. Nos. 25JV00421,<br>25JV00422)<br>(Santa Barbara County) |

L.A. (Mother) and M.A. (Father) petition for extraordinary writ, challenging the juvenile court's order bypassing reunification services and setting the matter for a selection and implementation hearing regarding their daughters A.M.A. and

A.I.A. (Welf. & Inst. Code,[1] § 366.26; Cal. Rules of Court, rule 8.452.) We deny the petitions.

FACTUAL AND PROCEDURAL HISTORY

Santa Barbara County Child Welfare Services (CWS) received a referral regarding five-month-old A.I.A. and 18-month-old A.M.A. after A.I.A. was brought to the hospital limp and nonresponsive on September 29, 2025. The parents reported that nine days earlier, on September 20, A.I.A. accidentally fell from a pillow face-first onto a desk, causing bruising to her face. The parents did not see a medical provider until September 25. The medical provider directed the parents to take A.I.A. to the emergency room, but the parents did not do so. A.I.A. had several injuries, including skull fractures, wrist and leg fractures, head trauma, and bruising on multiple parts of her body. A.I.A. was comatose and transferred to Stanford Children's Hospital. A.M.A. was taken into protective custody.

CWS spoke to Dr. Melissa Egge, who reported that the parents' explanation for the injuries and timeline did not match the extent of injuries, and that there were likely multiple incidents causing injury. The injuries were "more likely a result of shaking or slamming the baby against a surface." The treating physicians at Stanford Hospital reported that A.I.A. had been seizing throughout the day, requiring antiseizure medication. The doctors were suspicious of child abuse due to the amount of trauma, which would "usually result from a major car accident." The doctors were also concerned about multiple fractures with different ages of healing, suggesting that some injuries stemmed from a different incident. The parents' story on how these

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

2

injuries occurred did not match the type and severity of A.I.A.'s injuries.

CWS filed an amended dependency petition alleging that both A.M.A. and A.I.A. suffered or were at substantial risk of suffering serious physical harm (§ 300, subd. (a)) and that the parents failed to protect or supervise them (*id.*, subd. (b)(1)). As to A.I.A., the petition alleged the parents inflicted severe physical abuse and cruelty (*id.*, subds. (e), (i)). As to A.M.A., the petition alleged sibling abuse (*id.*, subd. (j)).

CWS filed a jurisdiction report recommending the juvenile court sustain the petition and the children remain out of home care with no visitation ordered. The social worker reported that Mother and Father had been participating in services and their goal was to reunify with their children. The social worker spoke with Dr. Egge, who said that some of the injuries occurred at different times. Dr. Egge believed there were at least two incidents that resulted in injury to A.I.A. with a "very serious head injury" happening on September 29. In reviewing A.I.A.'s eye injuries, Dr. Egge reported there was a lot of blood behind her eyes and torn retinas. A.I.A had no eyesight as a result of her injuries.

As to A.I.A.'s development, Dr. Egge stated that she suffered a serious brain injury and that her prognosis was uncertain. It was possible that A.I.A. would have cerebral palsy or be required to use a wheelchair in the future. A social worker from Stanford Hospital said that A.I.A.'s prognosis could not be predicted at this time, but that the child would need continual reassessment and appointments with specialists in the future. After discharge, A.I.A. would need a neck brace for four to six weeks, a feeding tube, and splints. A doctor at Stanford Hospital

3

noted that A.I.A. was currently stable but that she was at risk of seizures and was on antiseizure medication. As to A.M.A., she completed an X-ray, ophthalmology consultation, and CT scan that showed no physical evidence of trauma or abnormalities.

CWS filed a disposition report recommending that the children be declared dependents of the court and that the juvenile court deny reunification services to the parents under section 361.5, subdivision (b)(5) and (6) and set a selection and implementation hearing (§ 366.26). The social worker reported that A.M.A. appeared to be comfortable in her resource home. A.I.A. was placed in a specialized confidential resource home due to her extensive needs. She had to have eye surgery, and her development had been impacted due to her brain injury.

At the contested jurisdiction/disposition hearing, several family members testified on behalf of Mother and Father. Mother testified, recounting what occurred on September 20. She said A.I.A. was moving normally after the fall, but Mother decided to call the clinic on September 24 to schedule an appointment. At the appointment on September 25, the medical provider recommended getting "imaging" done, but Mother opted not to do so because there was "no sense of emergency." On September 29, Mother observed A.I.A. acting normally in the morning. Later that day, Father told Mother to come directly home from work. When Mother came home, Father told her they needed to go to the hospital because A.I.A. was unresponsive.

The social worker assigned to the case testified that she did not believe services could be offered to prevent reabuse because the parents had not taken accountability for what had happened. Thus, there was no service that could "accurately" address the underlying issue. The social worker believed it would not be

4

detrimental to the children to deny reunification services due to the extent of A.I.A.'s injuries and the "high risk" of reabuse. She also believed that A.M.A. was likely at risk and the abuse could shift to her. The social worker opined it would not be in the children's best interest for their parents to receive services because of the children's age and the significance of A.I.A.'s injuries. Although the social worker acknowledged the parents participated in services, "there has not been the recognition that the abuse was inflicted non-accidentally. Therefore, we can't work with a parent that's not giving us ownership of their actions."

At the conclusion of the hearing, the juvenile court sustained the allegations in the petition. The court found that the medical and expert evidence regarding the extent of A.I.A's injuries was "uncontradicted and undisputed," and that the evidence supported that the injuries were nonaccidental. The court also found that the presumption under section 355.1 applied—that the injuries were the result of the unreasonable or neglectful acts of the parents and that such a finding was prima facie evidence of the allegations under section 300, subdivisions (a) and (b). The court found the parents did not present contrary evidence and also found the subdivision (a) and (b) allegations true.

As to the allegation that the parents inflicted severe physical abuse (§ 300, subd. (e)), the court found that even though it was unclear who committed all the injuries, the parents were the sole caretakers and that the parents either knew or reasonably should have known of the abuse. The court relied upon the medical evidence and the opinions of doctors regarding the severe extent of A.I.A.'s injuries. The court also found that

5

the parents "minimize[d]" A.I.A.'s injuries suffered on September 20. The court noted that "despite the evident bruising and swelling the child suffered and despite the recommendations of the nurse practitioner" to go to the emergency room, the parents "delayed the care." The court found that there was a "reasonable inference that they minimized the injuries that occurred to the child during the prior injuries," and that there "seems to be a pattern here." The court also found Mother's testimony to be not credible and that she "knew or reasonably should have known of the abuse."

The court also denied reunification services to Mother and Father pursuant to section 361.5, subdivision (b)(5) and (6) based on the finding that A.I.A. was brought within the court's jurisdiction under section 300, subdivision (e) and that A.I.A's severe physical abuse was due to the parents' conduct. The court found there was "no competent evidence" that reunification services were likely to prevent reabuse. The court set a section 366.26 hearing.

DISCUSSION

*Section 300, subdivision (e)*

Mother and Father contend the juvenile court erred in bypassing reunification services pursuant to section 361.5, subdivision (b)(5) and (6). Under section 361.5, subdivision (b)(5), reunification services need not be provided where the court finds, by clear and convincing evidence, that "the child was brought within the jurisdiction of the court under subdivision (e) of Section 300" for "severe physical abuse by a parent."

We review Mother and Father's challenges to the juvenile court's true finding on section 300, subdivision (e) for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) " 'In making this

6

determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' " (*Ibid.*)

Under section 300, subdivision (e), a child comes within the dependency court's jurisdiction where the "child is under five years of age and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child.  For the purposes of this subdivision, 'severe physical abuse' means any of the following: any single act of abuse that causes physical trauma of sufficient severity that, if left untreated, would cause permanent physical disfigurement, permanent physical disability, or death; . . . or more than one act of physical abuse, each of which causes bleeding, deep bruising, significant external or internal swelling, bone fracture, or unconsciousness . . . ."

Here, substantial evidence supports the true finding on the section 300, subdivision (e) allegation.  A.I.A., who was only five months old at the time of the referral, suffered injuries from "severe physical abuse."  She had multiple skull fractures, eye injuries, bruising on multiple parts of her body, and wrist and leg fractures.  She was also comatose for a time and suffered seizures.  A.I.A. also suffered developmental delays, and while her prognosis was unknown, it was possible she could be blind and have permanent brain injury.  Some of her injuries were older and in different stages of healing, indicating there were multiple instances of abuse.

Although it was unclear whether only Father or both parents inflicted all the injuries, the juvenile court was not required to identify the offending party to sustain the section 300, subdivision (e) allegation. It could do so if the evidence showed that the parent knew or reasonably should have known of the abuse. (*In re E.H.* (2003) 108 Cal.App.4th 659, 670.) And here, substantial evidence supports that Mother and Father knew or reasonably should have known of the abuse.

The extent of A.I.A.'s injuries was severe and similar to the type of injuries sustained in a major car accident. As the juvenile court observed, it would be "hard to believe that the parent would not know or reasonably not know that their child had suffered these injuries." Furthermore, Dr. Egge and the treating physicians at Stanford Hospital opined that the injuries were consistent with child abuse and that Mother and Father's explanations were inconsistent with the actual injuries. The evidence also reflects that the parents minimized and delayed treatment of the injuries. A.I.A. suffered injuries on September 20 that caused bruising to her face, the parents did not seek immediate treatment and took her to an appointment five days later, and they did not follow the medical provider's direction to take A.I.A. to the emergency room. This evidence supports the court's findings that the parents were evasive, knew of the abuse, and minimized and contributed to the abuse by delaying care.

Mother and Father contend the juvenile court relied on "untested and incomplete medical conclusions" that were "not subject to cross-examination" and "no medical professionals testified to explain how they reached their conclusions." They also assert there was no "independent medical testimony or evaluation" to "test or challenge" the medical conclusions. We are

8

not persuaded.  Mother and Father did not call their own medical expert to dispute the medical evidence or conclusions.  Nor did they subpoena the doctors that examined A.I.A.  On appeal, we will affirm if substantial evidence, contradicted or uncontradicted, supports the juvenile court's finding.  And we do not determine issues of fact and credibility or reweigh the evidence.  (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.)  Substantial evidence including the medical records and the opinions of doctors support the juvenile court's finding.

*Bypass of reunification services*

Generally, when a child is removed from the parent's physical custody, "the juvenile court shall order the social worker to provide child welfare services."  (§ 361.5, subd. (a).)  However, "[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence" one of the enumerated circumstances under section 361.5, subdivision (b).  (*Id.*, subd. (b).)

We review a juvenile court's decision to bypass reunification for substantial evidence.  (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 382.)  "We review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard."  (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 694, italics omitted.)

*1. Section 361.5, subdivision (b)(5)—reunification services as to A.I.A.*

Reunification services need not be provided where the juvenile court finds, by clear and convincing evidence, that "the child was brought within the jurisdiction of the court under

9

subdivision (e) of Section 300 because of the conduct of that parent." (§ 361.5, subd. (b)(5).) If this bypass provision applies, the court "shall not order reunification . . . unless it finds that, based on competent evidence, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent. The social worker shall investigate the circumstances leading to the removal of the child and advise the court whether there are circumstances that indicate that reunification is likely to be successful or unsuccessful and whether failure to order reunification is likely to be detrimental to the child." (§ 361.5, subd. (c)(3).) In determining likelihood of success, the court may consider "[t]he failure of the parent to respond to previous services, the fact that the child was abused while the parent was under the influence of drugs or alcohol, a past history of violent behavior, or testimony by a competent professional that the parent's behavior is unlikely to be changed by services." (*Id.*, subd. (c)(4).)

Substantial evidence supports bypass of reunification services as to A.I.A. pursuant to section 361.5, subdivision (b)(5). A.I.A. is a child brought under dependency jurisdiction under section 300, subdivision (e). As we explained, substantial evidence supports the court's finding that Mother and Father inflicted or knew or reasonably should have known that someone inflicted severe physical abuse on A.I.A.

Mother and Father contend the juvenile court "did not adequately consider whether any identified concerns could be mitigated through reunification services, supervision, or safety planning." But they did not present competent evidence to show that services are likely to prevent reabuse or that failure to try

10

reunification will be detrimental to the child. Where "neither parent was even willing to acknowledge that nonaccidental injury occurred, . . . it is difficult to imagine how any services would have been likely to prevent reabuse." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 327; see also *In re Raul V.* (2022) 82 Cal.App.5th 290, 301.)

Here, Mother and Father denied that A.I.A.'s injuries were nonaccidental. As the social worker testified, without recognizing the abuse was nonaccidental, reunification services cannot address behaviors that led to the dependency. There was also no evidence that the failure to try reunification would be detrimental to the children. A.I.A. was only five months old at the time of the referral. There was no evidence that she had a close and positive attachment to her parents such that she would suffer detriment without reunification. As there was no competent evidence to show that reunification services would likely prevent abuse or that failure to try reunification would be detrimental to A.I.A., bypass of reunification services was mandatory. (*In re Raul V.*, *supra*, 82 Cal.App.5th at p. 292.)

*2. Section 361.5, subdivision (b)(6)—reunification services as to A.I.A. and A.M.A.*

Under section 361.5, subdivision (b)(6), reunification services need not be provided where the court finds, by clear and convincing evidence, that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to the child, [or] a sibling . . . by a parent . . . and the court makes a factual finding

11

that it would not benefit the child to pursue reunification services with the offending parent."  (§ 361.5, subd. (b)(6)(A).)

"A finding of the infliction of severe physical harm . . . may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body or the body of a sibling . . . of the child by act or omission of the parent."  (§ 361.5, subd. (b)(6)(C).) " 'The Legislature did not intend subdivision (b)(6) to apply to deny reunification services to a negligent parent; rather, the parent must have been complicit in the deliberate abuse of the child.' "  (*J.J. v. Superior Court* (2022) 81 Cal.App.5th 447, 456.)

In determining whether reunification services will benefit the child, the court "shall consider any information it deems relevant, including": (1) the specific act or omission comprising the severe physical harm inflicted on the child or the child's sibling, (2) the circumstances under which the abuse or harm was inflicted, (3) the severity of the emotional trauma, (4) any history of abuse of other children by the offending parent, (5) the likelihood that the child may be safely returned to the care of the offending parent within 12 months with no continuing supervision, and (6) whether the child desires to be reunified with the offending parent.  (§ 361.5, subd. (i).)

The court "shall not order reunification for a parent" under subdivision (b)(6) "unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).)

Substantial evidence supports the juvenile court's decision to bypass services as to both A.I.A. and A.M.A. pursuant to section 361.5, subdivision (b)(6) due to the severe physical harm inflicted upon A.I.A.  Mother and Father were the sole caretakers of A.I.A. and A.M.A. and there is no evidence that anyone else

inflicted abuse on A.I.A.  Here, the evidence supports that Father inflicted some of the injuries to A.I.A.  The child was in Father's care when the serious injuries occurred—Mother testified that she was not in the room when A.I.A. allegedly fell on September 20 and that A.I.A. became nonresponsive at some point before Mother returned home from work on September 29.

Additionally, the evidence supports that both Mother and Father inflicted serious injury through omission.  They failed to properly treat A.I.A.'s injuries by delaying treatment for several days after September 20, despite the visible bruising on the child's face.  They then did not follow the medical professional's direction to take A.I.A. to the emergency room.  The fact that Mother and Father told a story that was inconsistent with the severity of the injuries, delayed treatment after the September 20 incident, and did not follow medical advice, support they were both complicit in the deliberate abuse of A.I.A.

Substantial evidence also supports that reunification services would not benefit the children.  As to the enumerated factors under section 361.5, subdivision (i), most factors, including the parents' actions and omissions and the circumstances of the abuse, weigh against a finding that reunification services would benefit the children.  A.I.A. was an infant.  She suffered "multiple . . . very egregious and serious injuries which will result in essentially lifelong disabilities," and these injuries were "non-accidental in nature."  The social worker testified there was a "high risk" of reabuse and that A.M.A. was at risk of abuse shifting to her.

We also conclude substantial evidence supports that reunification would not be in the best interest of the children. (§ 361.5, subd. (c)(2).)  Here, the social worker testified that due

13

to the significance of A.I.A.'s injuries, both children were at risk of reabuse, and there would be no detriment in bypassing reunification because of the children's young ages. Mother and Father did not present clear and convincing evidence to the contrary.

DISPOSITION

The petitions for extraordinary writ are denied.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

14

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

L.A., in pro. per., for Petitioner L.A. (Mother).
M.A., in pro. per., for Petitioner M.A. (Father).
No appearance for Respondent.
Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Real Party in Interest.